IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES R. RUNYON,                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              ) Civ. Action No. 12-002-GMS
                                    )
CARL DANBERG, et al.,               )
                                    )
            Defendants.             )

### MEMORANDUM

The plaintiff, James R. Runyon ("Runyon"), an inmate at the James T. Vaughn

Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983

alleging violations of his First, Fourth, Eighth, and Fourteenth Amendment rights to the United

States Constitution and violations of the Delaware Constitution.[1] (D.I. 2.)  He appears *pro se* and

was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (D.I. 7.)

The court proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)

and § 1915A.

## I. BACKGROUND

Runyon's incarceration began in February 2006.  He arrived at the VCC in February

2007 and was transferred to the Security Housing Unit ("SHU").  Runyon received a disciplinary

infraction, was found guilty, and sanctioned to forty days isolation.  (D.I. 2 at 14.)  Thereafter, he

was transferred to the SHU isolation unit on November 29, 2009, and remained there for

seventeen days.  (*Id.* at 17.)  On December 16, 2009, Runyon attempted suicide and was

---

[1]Pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

transferred to the infirmary and placed on suicide watch. (*Id.* at 29-30.) Runyon remained in the

prison infirmary for six days. On or about December 21, 2009, the defendant Marcello Rispoli

("Rispoli") ordered Runyon's transfer to the C-Building isolation unit (i.e., the hole).[2] (*Id.* at 31-

32.)

Runyon was housed in the C-Building isolation unit for fourteen days, until January 3,

2010. Runyon provides a litany of complaints regarding his fourteen-day stay, as follows: (1)

cells are illuminated only when guards conduct visual body cavity strip searches or when medical

or mental health personnel see inmates; (2) the showers are dirty with stagnant water; (3) he was

subjected to visual body cavity searches three times per day; (4) during a three-day period, with

below freezing temperatures, he was housed in a cell with malfunctioning heat and a window that

was stuck open while wearing only undershorts, socks, and a T-shirt and with only a sheet and a

blanket, the cell and its toilet were filthy and the stench unbearable, and the mattress was torn,

dirty, and smelled; (7) upon transfer to a new cell, there was no heat, the cell was filthy, the toilet

unsanitary, and requests for more clothing and blankets were denied; (8) he was not allowed to

keep soap, toothpaste, or adequate amounts of toilet paper in his cell, he had no access to the law

library, to grievances, or to writing supplies; (9) cleaning supplies were not available; (10) he

was denied out-of-cell exercise; and (11) he was only allowed a five-minute shower, three times

per week. (*Id.* at ¶¶ 87-117.)

On January 3, 2010, Rispoli ordered Runyon's transfer to the SHU. Runyon informed the

defendant Corporal Parson ("Parson") that he feared for his safety if placed in disciplinary

---

[2]Paragraphs forty-one through eighty-five contain numerous allegations. However, as
will be discussed, the claims in these paragraphs are time-barred.

segregation, and he sought protective custody.  Rispoli was informed of Runyon's concerns, but would not place Runyon in protective custody and indicated that Runyon had the option of an assignment in disciplinary segregation or returning to the punitive isolation unit.  Runyon opted for disciplinary segregation.

After receiving threats, Runyon wrote letters and submitted grievances.  On April 21, 2010, Rispoli ordered Runyon's transfer to protective custody.  Two days later, the defendants Savage ("Savage") and Dietrich ("Dietrich") asked Runyon to voluntarily "sign off" protective custody because there was not a valid safety concern and no need for protection from harm. Runyon refused, and Savage and Dietrich had Runyon transferred from protective custody to punitive segregation.  Runyon alleges that the actions of Savage and Dietrich were retaliation for the exercise of his right to free speech when he refused to voluntarily sign-off protective custody. Runyon was immediately harassed upon his transfer to punitive segregation.

In October, Runyon was transferred to a lower maximum security unit.  Runyon complains that safety continues to be an issue, but he is currently protected having "struck a deal with the Muslim prisoners to protect him" in payment for money.  He also complains that, due to a ban on nail clippers and razors to all maximum security and pretrial detainees, his ability to care for his hygiene is inadequate.  Instead, Runyon must be shaved by the inmate barber and must trim his nails by ripping them off or scraping them against the concrete wall.  (*Id.* at ¶¶ 118-138.)

The complaint raises the following counts:  Count I alleges inadequate sanitation, maintenance, and hygiene during the thirty-one days Runyon was housed in the SHU and C-Building isolation units; Count II alleges inadequate heat, shelter, clothing, and bedding from

3

December 21, 2009 through December 24, 2009, when Runyon was housed in the C-Building isolation unit; Count III alleges denial of hygiene, cleaning materials, and basic human necessities during the thirty-one days Runyon was housed in the SHU and C-Building isolation units; Count IV alleges denial of out-of-cell exercise and fresh air during the fourteen days Runyon was housed in the C-Building isolation unit; Counts V and XII allege unnecessary, unjustified, and unreasonable visual body-cavity strip searches during thirty-one days Runyon was housed in the SHU and C-Building isolation units; Count VI alleges failure to protect Runyon from psychological and emotional injury during the time he was housed in the SHU and C-Building isolation units; Count VII alleges failure to protect Runyon from the constant threat of violence, harassment, and substantial risk of serious harm due to being labeled as a snitch; Count VIII alleges retaliation against protected speech; Count IX alleges violation of a protected liberty interest; Count X alleges the denial of nail clippers and shaving razors; Count XI alleges disparate treatment; and Count XIII alleges the failure to take remedial action after notification of hazardous and deplorable conditions. Runyon seeks declaratory and injunctive relief as well as compensatory and punitive damages.

## II. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most

4

favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Runyon proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Runyon leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The

assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 678. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that Runyon has a "plausible claim for relief."[3] *Id.* at 211. In other words, the complaint must do more than allege Runyon's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. Statute of Limitations

The complaint refers to the following discrete time-frames with regard to Runyon's housing assignments: (1) SHU isolation unit from November 29, 2009 through December 16, 2009; (2) the infirmary from December 16, 2009 through December 21, 2009; (3) C-Building isolation unit from December 21, 2009 through January 3, 2010; (4) SHU disciplinary

---

[3]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

segregation from January 3, 2010 through April 21, 2010; (5) protective custody from April 21,

2010 through April 23, 2010; (6) punitive segregation from April 23, 2010 through October

2010; and (7) lower maximum security unit from October 2010 to date.

Runyon's complaint was signed on December 22, 2011, is postmarked on December 29,

29, 2011, and was filed stamped on January 3, 2012. Pursuant to the prisoner mail-box rule, the

court concludes that the complaint was filed on December 22, 2011.[4] Paragraphs forty-one

through eighty-five raise claims in Counts I, III, V, VI, IX, and XII, pursuant to 42 U.S.C.

§ 1983, for acts that occurred through December 16, 2009 while Runyon was housed in the SHU

isolation unit and the infirmary.

Section 1983 claims are subject to Delaware's two-year statute of limitations for personal

injury actions. *See Kost v. Kozakiewicz*, 1 F.3d 176, 189-90 (3d Cir. 1993); *see also* 10 Del. C.

§ 8119. When the affirmative defense of statute of limitations is obvious from the face of the

complaint and no development of the record is necessary, a court may dismiss a time-barred

action *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. *See Smith v.

Delaware Cnty. Court*, 260 F. App'x 454, 455 (3d Cir. 2008) (not published); *Wakefield v.*

---

[4]The computation of time for complaints filed by *pro se* inmates is determined according
to the "mailbox rule" which deems a complaint filed as of the date it was delivered to prison
officials for mailing to the court. *See Houston v. Lack*, 487 U.S. 266 (1988). While *Houston*
dealt specifically with the filing of a habeas appeal, the decision has been extended by the Court
of Appeals for the Third Circuit to other prisoner filings, *see Burns v. Morton*, 134 F.3d 109, 112
(3d Cir. 1998), and this district has extended the mailbox rule to *pro se* § 1983 complaints, *Gibbs
v. Decker*, 234 F.Supp. 2d 458, 463 (D. Del. 2002). Runyon's complaint was signed on
December 22, 2011, and the envelope it was mailed in is post-marked December 29, 2011.
Therefore, Runyon's complaint was delivered to prison authorities for mailing some time
between December 22 and December 29, 2011. Giving Runyon the benefit, the court concludes
that his complaint was filed on December 22, 2011, the date it was signed, and the earliest date
possible that it could have been delivered to prison officials in Delaware for mailing.

*Moore*, 211 F. App'x 99 (3d Cir. 2006) (not published).

In paragraphs forty-one through eighty-five, Runyon raises claims that arose through December 16, 2009, but the complaint was not filed until December 22, 2011. Hence, it is evident from the face of the complaint, that the claims in paragraphs forty-one through eighty-five are barred by the applicable two-year limitation period. Accordingly, the court will dismiss paragraphs twenty-seven through eighty-five as included in Counts I, III, V, VI, IX, and XII, as time-barred pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915A(b)(1).[5]

### B. Conditions of Confinement

Runyon makes numerous allegations complaining of the conditions of confinement to which he was subjected. "The Eighth Amendment to the United States Constitution prohibits any punishment which violates civilized standards and concepts of humanity and decency." *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992), superseded on other grounds by 42 U.S.C. § 1997e(a). A prisoner does not lose this protection despite a prison sentence, for "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is

---

[5]Counts I, III, V, VI, IX, and XII combine, and raise, claims for two distinct time-frames - the time-barred claims when Runyon was housed in the SHU isolation unit and the claims when Runyon was housed in the C-Building isolation unit. Because the SHU isolation unit claims are time-barred, the court will not discuss the merits of those claims.

brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective element requires a prisoner to show that his living conditions amounted to a "serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The subjective element requires that the prison official must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

### 1. Counts I, II, and III

Counts I, II, and III allege unlawful conditions of confinement during the fourteen days Runyon was housed in the C-Building isolation unit. More specifically, Count I alleges inadequate sanitation, maintenance and hygiene due to dirty cell conditions and a dirty shower area. The complaint fails to indicate against whom Count I is directed. Count II refers specifically to the three day period that Runyon spent in the isolation unit, from December 21 through December 24, 2009, in a cell with a broken window, with a malfunctioning heating unit, during near freezing temperatures, with only a sheet and a blanket, and wearing only undershorts, socks and a T-shirt. Count II is raised against the defendants Sgt. Monte ("Monte") who was the day-time sergeant of the C-Building isolation unit and who knew of the conditions and against the defendants John Does #1, #2, and #3. Count III alleges the denial of hygiene, cleaning materials, and basic human necessities because Runyon did not have access to soap to wash his hands after each bowel movement, he was unable to brush his teeth on a regular basis, he had inadequate amounts of toilet paper, he wore soiled clothing, he was denied writing utensils and, at times, eating utensils, he was denied cleaning supplies to sanitize the cell, and he was denied

9

adequate clothing and bedding materials. Similar to Count I, the complaint fails to allege against whom Count III is directed.

Construing the complaint liberally, Runyon has stated Eighth Amendment conditions of confinement claims in Counts I, II, and III. *See Royster v. Beard*, 2011 WL 1085973 (W.D. Pa. Feb. 28, 2011). However, because the complaint fails to indicate against whom Counts I and III are directed, they will be dismissed pursuant to pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915A(b)(1), for failure to state a claim upon which relief may be granted. Since it appears plausible that Runyon may be able to articulate a claim against the defendants (or name alternative defendants), he will be given an opportunity to amend Counts I and III. *See O'Dell v. United States Gov't*, 256 F. App'x 444 (3d Cir. 2007) (not published) (leave to amend is proper where the plaintiff's claims do not appear "patently meritless and beyond all hope of redemption").

### 2. Exercise

Runyon alleges in Count IV, that he was denied out-of-cell exercise and fresh air for fourteen days while housed in the C-Building isolation unit. He raises the claim against the defendants James Scarborough ("Scarborough"), Rispoli, and Jane Henry ("Henry").

The denial of exercise or recreation can result in a constitutional violation. "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir . 1979)); *see also Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) ("[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation."). The lack of exercise can only rise to a constitutional

level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." *Spain*, 600 F.2d at 199. Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated.

Here, Runyon's allegations that he was denied recreation for a two-week period fails to meet this standard. *See, e.g., Arce v. Walker*, 907 F. Supp. 658, 662 (W.D.N.Y. 1995) (Eighth Amendment not violated when inmate was deprived of out-of-cell exercise for eighteen out of nineteen days), *rev'd on other grounds*, 139 F.3d 329 (2d Cir. 1998); *Davidson v. Coughlin*, 968 F.Supp. 121, 131 (S.D.N.Y. 1997) (deprivation of outdoor exercise for fourteen days did not violate Eighth Amendment).

Count IV, alleging a constitutional violation has no basis in law or fact. Therefore, the court will dismiss Count IV as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1).

### 3. Visual Body Cavity Strip Search

Counts V and XII allege the three times daily, visual body cavity strip searches are unnecessary, unjustified, and have no penalogical purpose. Runyon alleges that the defendants Carl Danberg ("Danberg"), Perry Phelps ("Phelps") , and David Pierce ("Pierce") developed, implemented, adopted, and approved the policy or custom of the searches.

Construing the complaint liberally, Runyon has stated a Fourth Amendment claim for unreasonable visual body cavity strip searches. *See Jordan v. Cicchi*, 428 F. App'x 195 (3d Cir. 2011) (not published).

11

### 4. Nail Clippers/Razor

Count X alleges that Phelps violated Runyon's rights under the Eighth Amendment when he implemented a policy that bans nail clippers and shaving razors. Count XI alleges that the ban, applied only to maximum security inmates and pretrial detainees, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Runyon alleges that Phelps' blanket ban is an exaggerated response to an isolated incident when an inmate used a shaving razor to assault another inmate.

Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Hence, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 527 (1979). Certainly, a policy prohibiting inmates from having shaving razors and nail clippers is reasonably related to the administrative objective of maintaining safety and security within the prison, *cf. Bell*, 441 U.S. at 553 (prison policy prohibiting pretrial detainees from receiving packages justified by security concerns such as the "traditional file in the cake kind of situation"). Indeed, the allegations indicate that the ban ensued following a violent episode by an inmate. Moreover, the complaint indicates that inmate barbers are available to shave inmates affected by the ban.

Although the ban on shaving razors and nail clippers might be considered overly cautious, courts are not to substitute their own judgments for those of expert prison administrators who have a far better understanding of the administrative and safety needs of the institutions that they oversee. *See Caldwell v. Miller*, 790 F.2d 589, 596 (7th Cir. 1986). For the

above reasons, the court will dismiss Counts X and XI as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1).

### C. Transfer to the C-Building Isolation Unit

Count VI alleges that Rispoli's act in transferring Runyon to the C-Building isolation unit amounted to a failure to protect Runyon from psychological and emotional injury. Runyon frames Count VI as a failure to protect issue, but it fails to meet the elements of a failure to protect claim. *See* ¶ III.D., *infra*. In addition, Count IX that Runyon had a liberty interest protected by the Fourteenth Amendment in avoiding assignment to the C-Building isolation unit because it imposed an atypical and significant hardship upon him.

To the extent Runyon attempts to raise a due process claim, the claim fails. In reviewing an alleged due process violation, it must be determined whether the alleged violation implicates a constitutionally protected property or liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995). "Liberty interests protected by the Fourteenth Amendment may arise from two sources-the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In a prison setting, States may create protected liberty interests. These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484 (internal citations omitted). Notably, neither Delaware law nor Delaware Department of Correction regulations create a liberty interest in a prisoner's classification within an institution. *See* 11 Del. C. § 6529(e). Moreover, "'[a]s

long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt*, 459 U.S. at 468 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

It has thus been determined that the transfer of a prisoner from one classification to another is unprotected by "'the Due Process Clause in and of itself,'" even though the change in status involves a significant modification in conditions of confinement. *Hewitt*, 459 U.S. at 468 (citation omitted); *Moody v. Daggett*, 429 U.S. 78 (1976); *see also Brown v. Cunningham*, 730 F.Supp. 612 (D.Del. 1990) (plaintiff's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest). While the conditions in the C-Building isolation unit as alleged by Runyon are onerous, the transfer from one classification to another did not violate his due process rights. *See Smith v. Mensinger*, 293 F.3d 641, 645, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate a liberty interest); *Torres v. Fauver*, 292 F.3d 141, 151-52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days was not atypical treatment in New Jersey prisons and therefore did not implicate a protected liberty interest).

According to the allegations in the complaint, Runyon spent two weeks in the C-Building isolation unit - an amount of time that does not implicate a protected liberty interest. Based upon the relatively short time Runyon was confined to the isolation unit, he lacks the requisite liberty interest to implicate a due process violation. As Runyon has not articulated a protected liberty interest with respect to his discipline, confinement, and loss of privileges or a cognizable failure

14

to protect claim, Counts VI and XI will be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### D. Failure to Protect

Count VII alleges that the defendants failed to protect Runyon from the constant threat of violence, harassment, and substantial risk of harm after he was labeled a snitch for testifying against a fellow inmate during a 2002 murder trial. Runyon alleges the defendants refuse to acknowledge the issue and would "rather wait until tragedy strikes." (D.I. 2 at ¶ 161.)

To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element). *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994); *see also Griffin v. DeRosa*, 153 F. App'x 851(3d Cir. 2005) (not published).

There are no allegations, that despite his fear, other inmates have harmed Runyon. Consequently, Count VII fails to state a failure to protect claim. Accordingly, it will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### E. Retaliation

In Count VIII, Runyon claims he was retaliated against by Savage and Deitrich when they transferred him to disciplinary segregation after he refused to "voluntarily sign-off" protective custody. Proof of a retaliation claim requires that Runyon demonstrate (1) constitutionally protected conduct; (2) an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,'" and (3) "a causal link between the

exercise of his constitutional rights and the adverse action taken against." *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003) (citations omitted).

Applying the retaliation standard and construing the complaint liberally, Runyon has stated a retaliation claim against Savage and Dietrich for the exercise of his First Amendment rights.

### F. Grievances/Complaints

Count XIII alleges that the defendants Phelps, Pierce, Scarborough, Rispoli, Michael Costello ("Costello"), Henry, and Joseph Simon ("Simon") violated Runyon's constitutional rights when they failed to take remedial action to ameliorate hazardous and deplorable conditions after being placed on notice through Runyon's grievances and letters.

"'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Participation in the after-the-fact review of a grievance is not enough to establish personal involvement liability as required for § 1983 claims. *See, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (not published) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation). *See also Cole v. Sobina*, 2007 WL 4460617 (W.D. Pa. 2007); *Ramos v. Pennsylvania Dep't of Corr.*, 2006 WL 2129148 (M.D. Pa. 2006).

Runyon cannot maintain a constitutional claim based upon his perception that no actions were taken by prison officials following the filing of his grievances and letters. Accordingly, the

16

court will dismiss Count XIII as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## IV. CONCLUSION

For the above reasons, the court will: (1) dismiss with prejudice all SHU isolation unit claims as time-barred and Counts IV, VI, VII, IX, X, XI and XIII as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1); and (2) dismiss Counts I and III for failure to state a claim upon which relief may be granted and give Runyon leave to amend Counts I and III. The court will allow Runyon to proceed as follows: (1) in Count II against Sgt. Monte and John Doe #1, #2, and #3; (2) in Counts V and XII against the defendants Carl Danberg, Perry Phelps, and David Pierce; and (3) in Count VIII against Larry Savage and Phillip Dietrich. The plaintiff is allowed to **proceed** against the foregoing defendants. All other defendants will be dismissed from the case.

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

May 06, 2012
Wilmington, Delaware